1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-FILED - 11/20/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE AIKENS,                    )        No. C 06-5239 RMW (PR)
                                  )
            Petitioner,           )        **ORDER DENYING PETITION**
                                  )        **FOR WRIT OF HABEAS**
    v.                            )        **CORPUS**
                                  )
TOM L. CAREY, Warden,             )
                                  )
            Respondent.           )
_____)

On April 17, 2006, petitioner, a state prisoner proceeding pro se, filed a petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction.  This

court found that the petition stated a cognizable federal habeas action under § 2254 and

ordered respondent to show cause why a writ of habeas corpus should not be granted.

Respondent filed an answer.  Petitioner subsequently filed a traverse.  This habeas

petition is now before the court for consideration on the merits.  For the reasons discussed

below, the petition is DENIED.

## PROCEDURAL BACKGROUND

On February 27, 2004, a Santa Clara County Superior Court jury convicted

petitioner of possessing cocaine, cocaine base, and methylenedioxy-amphetamine

(MDMA) for sale, possessing an assault weapon and a short barreled shotgun, and being a

felon in possession of a firearm.  Exh. 1, at 188-93.  On April 21, 2004, petitioner was

sentenced to a state prison term of fifteen years and four months.  Exh. 1, at 228-29.

Petitioner appealed his conviction to the California Court of Appeal. The California Court of Appeal for the Sixth Appellate District affirmed petitioner's conviction in an unpublished reasoned opinion. See People v. Aikens, No. H027400, 2005 WL 1531657, at *11 (Cal. Ct. App. June 30, 2005). On September 28, 2005, the California Supreme Court denied petition for review. Exh. 6. Petitioner filed petitions for a writ of habeas corpus in the state courts. The California Court of Appeal and California Supreme Court denied these petitions on August 14, 2006 and November 28, 2007, respectively.

## FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized as follows:

> During July 2003, the San Jose and Sunnyvale Police Departments were jointly investigating defendant, aka Shawn Moore, for drug trafficking. They had focused on two locations where they had observed defendant coming and going: a residence at 3694 Lightfare Court in San Jose and an apartment at 1180 Lochinvar in Sunnyvale. On July 31, 2003, police officers watched defendant leave the Lochinvar apartment in a car that they had also seen near the Lightfare Court address. They stopped defendant and arrested him and around the same time executed search warrants for both locations.

> At the Lightfare Court address, police found 54 rocks of cocaine base, drug scrubbing material, razor blades, and two electronic scales, one with powered residue on it. There was also a bag containing a crumbled off-white substance. In a bedroom, police found a driver's license issued to defendant's brother Tyrone Aikens; an employee badge issued to Shawn Moore; a postcard also to Moore; and some letters to a person named Anthony Smith.

> At the Lochinvar address, police searched a closet, which had male clothing on one side and female clothing on the other. On the male side, police found a sawed-off shotgun, a bullet-proof vest, and a safe. A key taken from defendant fit the safe. However, because it also had a combination lock, police had to force it open. The safe held a plastic bag containing 32.42 grams of cocaine base; one kilogram of cocaine; a loaded revolver; a TEC-9 semi-automatic weapon and magazine; 75 MDMA tablets; and $4,700 in cash.

> Over a defense objection, Officer Jim Lisius of the Narcotic Covert Investigations Unit (NCIU) in the San Jose Police Department testified as an expert concerning the recognition

of cocaine and cocaine base and their possession for personal use or sale; the recognition of MDMA and its possession for use or sale; and the recognition of firearms and assault weapons. He had been present when defendant was arrested and helped search the Lightfare Court address.

Officer Lisius explained that cocaine base is smoked using a pipe lined with the sort of scrubbing material found at one location. He testified that three of the 54 rocks of cocaine base found at the Lightfare address were larger than the others, and their size was consistent with what drug traffickers call eight balls-i.e., rocks that dealers sell to other dealers. Eight-balls are usually cut into smaller rocks with razor blades and the smaller rocks sold to end users. The 51 smaller rocks were consistent with the size of rocks sold to users. Lisius opined that all of the rocks were possessed for sale.

Officer Lisius further testified that the kilo of cocaine and 32.42 grams of cocaine base found in the safe were also possessed for sale. He explained that cocaine and cocaine base are different drugs, but cocaine can be transformed into cocaine base. A kilo of cocaine-i.e., 2.2 pounds-is the standard size of packages smuggled into this country. When diluted with a cutting agent, a kilo of cocaine could ultimately yield up to 20 pounds of saleable cocaine. Given the kilo, large amount of cash, firearms, and different locations where drugs were found, Officer Lisius opined that defendant was a high-level dealer. He explained that drug dealers often use safes to store and protect drugs and also use different locations to minimize exposure to potential loss. Officer Lisius also opined that the TEC-9 weapon found at the Lochinvar apartment was an assault weapon, and the shotgun was a sawed-off shotgun.

Officer Lisius testified that a typical MDMA user will take one tablet every four to six hours. Given the large number MDMA tablets-75-and their presence along with the large amount of cocaine and weapons, Officer Lisius opined that they were possessed for sale.

***

The defendant presented no witnesses. During closing argument, defense counsel challenged the observations of defendant by the police and suggested that they had manipulated and contaminated the evidence. He also asserted that not all of the substances seized had been tested. Counsel argued that someone else, not defendant, had exclusive possession and control of the evidence seized at the two locations.

Aikens, 2005 WL 1531657, at *1-2 (footnote omitted).

1

**STANDARD OF REVIEW**

2   This court may entertain a petition for a writ of habeas corpus "in behalf of a

3 person in custody pursuant to the judgment of a state court only on the ground that he is

4 in custody in violation of the Constitution or laws or treaties of the United States."  28

5 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was

6 adjudicated on the merits in state court unless the state court's adjudication of the claim:

7 "(1) resulted in a decision that was contrary to, or involved an unreasonable application

8 of, clearly established Federal law, as determined by the Supreme Court of the United

9 States; or (2) resulted in a decision that was based on an unreasonable determination of

10 the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

11 2254(d).

12   Under the "contrary to" clause, a federal habeas court may grant the writ if the

13 state court arrives at a conclusion opposite to that reached by the Supreme Court on a

14 question of law or if the state court decides a case differently than the Supreme Court has

15 on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 413

16 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant

17 the writ if the state court identifies the correct governing legal principle from the Supreme

18 Court's decision but unreasonably applies that principle to the facts of the prisoner's case.

19 Id.  As summarized by the Ninth Circuit: "A state court's decision can involve an

20 'unreasonable application' of federal law if it either 1) correctly identifies the governing

21 rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)

22 extends or fails to extend a clearly established legal principle to a new context in a way

23 that is objectively unreasonable."  Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir.

24 2000) (citing Williams, 529 U.S. at 405-07), overruled in part on other grounds by

25 Lockyer v. Andrade, 538 U.S. 63 (2003).

26   "[A] federal habeas court may not issue the writ simply because that court

27 concludes in its independent judgment that the relevant state-court decision applied

28 clearly established federal law erroneously or incorrectly.  Rather, that application must

1    also be unreasonable." <u>Williams</u>, 529 U.S. at 411.

2        In deciding whether the state court's decision is contrary to, or an unreasonable

3    application of clearly established federal law, a federal court looks to the decision of the

4    highest state court to address the merits of a petitioner's claim in a reasoned decision.

5    <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  If the state court only

6    considered state law, the federal court must ask whether state law, as explained by the

7    state court, is "contrary to" clearly established governing federal law.  <u>See</u> <u>Lockhart v.</u>

8    <u>Terhune</u>, 250 F.3d 1223, 1230 (9th Cir. 2001).

9        The standard of review under § 2254 is somewhat different where the state court

10   gives no reasoned explanation of its decision on a petitioner's federal claim and there is

11   no reasoned lower court decision on the claim.  In such a case, a review of the record is

12   the only means of deciding whether the state court's decision was objectively reasonable.

13   <u>See</u> <u>Plascencia v. Alameda</u>, 467 F.3d 1190, 1197-98 (9th Cir. 2006).  When confronted

14   with such a decision, a federal court should conduct "an independent review of the

15   record" to determine whether the state court's decision was an objectively unreasonable

16   application of clearly established federal law.  <u>Richter v. Hickman</u>, 521 F.3d 1222, 1229

17   (9th Cir. 2008).  The federal court need not otherwise defer to the state court decision

18   under § 2254: "A state court's decision on the merits concerning a question of law is, and

19   should be, afforded respect.  If there is no such decision on the merits, however, there is

20   nothing to which to defer."  <u>Greene v. Lambert</u>, 288 F.3d 1081, 1089 (9th Cir. 2002).  In

21   sum, "while we are not required to defer to a state court's decision when that court gives

22   us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding

23   whether the state court's resolution of the case constituted an unreasonable application of

24   clearly established federal law."  <u>Fisher v. Roe</u>, 263 F.3d 906, 914 (9th Cir. 2001).

25

26

27

28

**DISCUSSION**

## I.   <u>Judicial Misconduct</u>

Petitioner contends that the trial court violated his federal constitutional right to a fair trial because the trial judge engaged in judicial misconduct.  Petitioner identifies several instances of such alleged misconduct as follows: the trial court manifested bias in the presentation of evidence, possibly leading the jury to believe the court was expressing an opinion on the merits; the trial judge usurped the duties of the prosecutor, creating the impression that the court was aligned with the prosecution; the court overruled proper defense objections; the trial judge vouched for the credibility of prosecution witnesses; the trial judge disparaged defense counsel's method of presentation; the trial judge criticized defense counsel for asking questions; and the trial judge gave the jury the impression that it disbelieved defendant's testimony.  Respondent counters that most of the comments made by the trial court were intended to move the case along and prevent the undue consumption of time and resources over collateral or irrelevant issues.

The California Court of Appeal, relying entirely on state law and precedent, rejected petitioner's claim.  It found that:

> We have reviewed all of the instances of alleged misconduct and need not separately reiterate them. . . . Most of the excerpts do not reflect improper and objectionable comments, and the cold record does not suggest they were uttered in a way that gave them a pejorative sting. Some comments do appear curt and perhaps bordered on being testy. However, we agree with the People's observation that most of the comments involved legitimate efforts to move the case along and avoiding an undue consumption of time objections and disagreements over collateral matters and irrelevant evidentiary and testimonial details.
>
> The most extensive excerpt involves the testimony of Officer Lisius as an expert witness. The exchange occurred in the context of (1) defense counsel's complaint that he could not voir dire without the background material he had requested; (2) the judge's offer of a recess; (3) counsel's insistence that without the material he could not prepare; and (4) the judge's effort to determine whether a recess would be productive or a waste of time. Although the judge's comments reflect some exasperation, they properly focused on resolving the issue. His apparent irritation was in part due to defense counsel's initial refusal to give the court a simple answer concerning whether he wanted a recess, something counsel ultimately did.

Other comments by the judge-e.g., telling counsel to confine his objection to the Evidence Code and to move on with his examination-were not intemperate. Indeed, they were less provocative than defense counsel's accusation that the judge was helping the prosecution, his invitation that if the judge wanted to try the case he should come down and do so, and comments reminding the judge of his ethical obligations.

In all, the judge's comments neither individually nor collectively conveyed the impression that the defense was ridiculous or unworthy of belief, or that the court was siding with the prosecution. Moreover, insofar as the court's comments may have communicated some irritation and lack of patience, any potential impact was rendered harmless by the court's closing instruction, which stated, "I have not intended by anything I have said or done, or by questions that I may have asked, or by any ruling I may have made, to intimate or suggest what you should find to be the facts or that I believe or disbelieve any witness. [¶] If anything I have done or said has seemed to so indicate, you will disregard it and form your own conclusion." [Citations.]

Aikens, 2005 WL 1531657, at *10-11 (footnote and citations omitted).

### A.    Legal Standard

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. See In re Murchison, 349 U.S. 133, 136 (1955). A defendant may establish that he was denied his constitutional right to a fair and impartial judge when the proceedings and surrounding circumstances demonstrate actual bias or an appearance of advocacy on the part of the judge, i.e., improper conduct. See Taylor v. Hayes, 418 U.S. 488, 501-04 (1974); United States v. Parker, 241 F.3d 1114, 1119 (9th Cir. 2001).

A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted), cert. denied, 517 U.S. 1158 (1996). Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See Liteky v. United States, 510 U.S. 540, 555 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not

1   constitute a basis for a bias or partiality motion unless they display a deep-seated

2   favoritism or antagonism that would make fair judgment impossible."   Id.

3   **B.   Analysis**

4   Petitioner identifies several instances of alleged judicial misconduct, two of which

5   occurred during defense counsel's cross-examination of Sergeant Larry Esquivel.  First,

6   defense counsel questioned Esquivel about procedures used to stop petitioner's vehicle

7   prior to his arrest.  Reporter's Transcript (RT) at 153-54.  The trial judge interrupted

8   counsel and asked what he was trying to elicit from the witness and whether he had an

9   offer of proof.  RT at 154.  The trial judge gave counsel the opportunity to address those

10  issues at sidebar, which defense counsel did.  RT at 154.  Defense counsel then proceeded

11  to question the witnesses, but he was interrupted by the trial judge again because he was

12  not asking the same question that he had said at sidebar that he would ask.  RT at 154.

13  The trial judge then told counsel: "Why don't you ask the officer the question that you

14  just told me you were going to elicit from him?"  RT at 154.  Defense counsel then asked

15  the question and proceeded with his cross-examination.  Second, defense counsel elicited

16  from Esquivel testimony that he did not personally see that petitioner was transported to

17  the staging area following the arrest, but that he learned of petitioner's transportation

18  from radio communications among the officers.  RT at 158.  Defense counsel moved to

19  strike all of Esquivel's testimony regarding petitioner's whereabouts.  RT at 158-59.  The

20  trial judge overruled the motion.  RT at 159.  When defense counsel asked to approach,

21  the judge stated: "Please continue your examination of this witness."  RT at 159.

22  Neither of the above two instances rise to the level of a due process violation.  See

23  Duckett, 67 F.3d at 740.  The trial judge was simply moving the proceedings along and

24  conforming counsel to the rules of evidence.  See United States v. Morgan, 376 F.3d

25  1002, 1008 (9th Cir. 2004) (finding it generally appropriate for trial judge to confine

26  counsel to evidentiary rulings, control the orderly presentation of the evidence, and

27  prevent undue repetition of testimony).  Nothing in the record indicates that the trial judge

28  "[displayed] a deep-seated favoritism or antagonism that would make fair judgment

1   impossible." <u>Liteky</u>, 510 U.S. at 555.

2       Next, petitioner complains of judicial misconduct regarding the prosecution's

3   handling of certain evidence during direct examination of Officer Lisius.  The prosecutor

4   prepared to have the officer identify individual pieces of paper that came from an

5   evidence bag marked as People's Exhibit Number 4.  RT at 214-15.  The prosecutor

6   admitted that earlier in the day he had removed some of the papers from the bag along

7   with some of staples.  RT at 214-15.  The prosecutor further admitted that he did these

8   things in the presence of an officer who could be called to testify to that effect.  RT at

9   215.  The court accepted the veracity of the prosecutor's admission.  RT at 215.  Defense

10  counsel objected, stating in the presence of the jury, "[t]here is no evidence to that effect.

11  And I appreciate the Court's trying to help the District Attorney.  But there is no evidence

12  that those came from that bag."  RT at 215.  The trial judge again stated that he accepted

13  the prosecutor's testimony and that the prosecutor was an officer of the court.  RT at 215.

14  The court then said, "I don't want [to] argue with you.  I want you to sit down and let [the

15  prosecutor] continue.  We can handle certain matters outside the presence of the jury."

16  RT at 216.

17      Petitioner contends that in this episode the trial judge vouched for the credibility of

18  a prosecution witness and disparaged the defense.  However, the court here merely relied

19  on the admissions of the prosecutor as an officer of the court.  Further, because the

20  prosecutor opened the bag and removed its contents in open court, the judge determined

21  that it would be an undue waste of judicial time and resources to hold a hearing to

22  determine how the prosecutor handled the contents of the bag that morning.  Even if the

23  judge's comments were, in the words of the California Court of Appeal, "curt" or "testy,"

24  this does not rise to a level of judicial misconduct.  Defense counsel was arguing with the

25  judge in front of the jury and accusing him in a sarcastic manner of "trying to help the

26  District Attorney."  The judge told him to sit down, and then moved the trial along.  This

27  amounted at most incidental irritation with counsel, not a "deep-seated favoritism or

28  antagonism that would make fair judgment impossible."  <u>Liteky</u>, 510 U.S. at 555.

1    In his traverse, petitioner raises another instance of judicial misconduct that

2  occurred during a later examination of Officer Lisius.  Officer Lisius was qualified by the

3  prosecution "as an expert in the area of recognition of cocaine and cocaine base" and

4  allowed "to give an opinion as to whether these items are possessed for sale or for

5  personal use."  RT at 273.  During cross-examination, defense counsel sought to elicit

6  from Officer Lisius testimony regarding drug mules.  RT at 359.  After developing a basic

7  understanding of what a drug mule is, defense counsel asked Officer Lisius, "when a

8  mule is possessing what may be large quantities of drugs they are not possessing it for

9  sale to sell it, but they are merely possessing it to transport it for somebody else?"  RT at

10  360.  The prosecution objected, noting that the defense was calling for a legal conclusion.

11  RT at 360.  Defense counsel replied that he was asking officer Lisius the question as an

12  expert.  RT at 360.  The court responded, "I think that that's really irrelevant here unless

13  you have some offer of proof. . . . I think this is well off the subject. . . . I'll just ask that

14  you review your notes during the recess."  RT at 360.  After the recess, the defense picked

15  up on a different line of questioning and did not return to the issue of drug mules.

16    Petitioner contends that the court committed misconduct by referring to the line of

17  questioning about drug mules as irrelevant and asking for an offer of proof.  Petitioner

18  fails to demonstrate how this episode amounts to judicial misconduct.  Defense counsel

19  could have rephrased the question so that it did not call for a legal conclusion.

20  Alternatively, if the defense theory was based on petitioner being a drug mule, counsel

21  could have made an offer of proof that would establish the relevance of his questions.  In

22  any case,  the judge appropriately conformed the questioning to the rules of evidence and

23  trial procedure.  See Morgan, 376 F.3d at 1008.  There is no showing that petitioner's

24  rights to confrontation, a fair trial, or due process were violated by the trial court's

25  rulings.

26    None of the above instances cited by the petitioner rise to the level of judicial

27  misconduct.  Moreover, a claim of judicial misconduct by a state judge in the context of

28  federal habeas review does not simply require that the federal court determine whether

1   the state judge committed judicial misconduct; rather, the question is whether the state

2   judge's behavior "rendered the trial so fundamentally unfair as to violate federal due

3   process under the United States Constitution."  <u>Duckett</u>, 67 F.3d at 740.  In this case, for

4   the reasons explained above, the trial judge's action in this case certainly did not render

5   the trial fundamentally unfair.  Consequently, the state court decision rejecting

6   petitioner's judicial misconduct claim was neither contrary to nor an unreasonable

7   application of clearly established Federal law, as determined by the Supreme Court of the

8   United States.

9   **II.**   **Ineffective Assistance of Counsel**

10         Petitioner claims that his trial counsel was ineffective in the following three

11   respects: (1) counsel failed to adequately challenge the judge's purported misconduct or

12   preserve the issue of misconduct for appeal; (2) counsel failed to conduct adequate

13   pretrial discovery and make certain pretrial motions, limiting his ability to voir dire and

14   cross-examine Officer Lisius; and (3) counsel failed to move to dismiss for lack of

15   evidence because the prosecution did not prove that petitioner had real or constructive

16   possession of the Lightfare and Lochinvar residences.[1]

17   **A.**   **Legal Standard**

18         A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

19   Sixth Amendment right to counsel, which guarantees not only assistance, but effective

20   assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  <u>See</u> <u>Williams</u>

21   <u>(Terry) v. Taylor</u>, 529 U.S. 362, 404-08 (2000).  The benchmark for judging any claim of

22   ineffectiveness must be whether counsel's conduct so undermined the proper functioning

23   of the adversarial process that the trial cannot be relied upon as having produced a just

24   result.  <u>Strickland</u>, 466 U.S. at 686.

25

26       [1]In addition to these specific complaints, petitioner also makes numerous general and

27   conclusory complaints about counsel's performance, such as that counsel failed to file unspecified motions, failed to present unspecified testimony.  The court does not address

28   such allegations separately because petitioner cannot demonstrate that counsel's performance was either deficient or prejudicial based on such generalized complaints.

1    In order to prevail on a Sixth Amendment ineffectiveness of counsel claim,

2 Petitioner must establish two things.  First, Petitioner must establish that counsel's

3 performance was deficient and fell below an "objective standard of reasonableness" under

4 prevailing professional norms.  Strickland, 466 U.S. at 687-88.  The relevant inquiry is not

5 what defense counsel could have done, but rather whether the choices made by defense

6 counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

7 Judicial scrutiny of counsel's performance must be highly deferential, and a court must

8 indulge a strong presumption that counsel's conduct falls within the wide range of

9 reasonable professional assistance.  See Strickland, 466 U.S. at 689.  Second, Petitioner

10 must establish that he was prejudiced by counsel's deficient performance and that "there is

11 a reasonable probability that, but for counsel's unprofessional errors, the result of the

12 proceeding would have been different."  Id. at 694.  A reasonable probability is a

13 probability sufficient to undermine confidence in the outcome.  Id.  The Strickland

14 framework for analyzing ineffective assistance of counsel claims is considered "clearly

15 established Federal law, as determined by the Supreme Court of the United States" for the

16 purposes of 28 U.S.C. § 2254(d) analysis.

17    It is unnecessary for a federal court considering a habeas ineffective assistance

18 claim to address the prejudice prong of the Strickland test if the petitioner cannot even

19 establish incompetence under the first prong, and vice versa.  See Siripongs v. Calderon,

20 133 F.3d 732, 737 (9th Cir. 1998).  The burden to prove prejudice rests with the Petitioner.

21 Strickland, 466 U.S. at 693.

22    **B.    Analysis**

23        **1.    Challenges to Trial Judge**

24    Petitioner argues that counsel should have filed various motions to control or

25 remove the trial judge,[2] and should have preserved the judicial misconduct claim for

26 appeal.  While defense counsel and the trial court had some exchanges that the California

27 _____

28    [2]These motions include a motion to disqualify, a Writ of Mandate/Prohibition, a
    demurrer, or a motion to dismiss pursuant to Cal. Penal Code § 995.

1  Court of Appeal accurately described as "curt" and "testy," for the reasons described

2  above, this did not amount to judicial misconduct, let alone a due process violation.

3  Moreover, the California Court of Appeal found as a matter of state law that the trial judge

4  did not engage in misconduct.  Consequently, there is no reasonable likelihood that any

5  motions based on judicial misconduct would have been successful if counsel had filed

6  them.  Accordingly, petitioner's claim for ineffective assistance of counsel on these

7  grounds fails.

8  **2.    Pretrial Motions and Discovery**

9          Petitioner next claims that his counsel was ineffective for not conducting adequate

10  pretrial discovery, not filing pretrial motions, and not being adequately prepared.

11  Petitioner's only specific complaint in this regard concerns counsel's voir dire of Officer

12  Lisius.

13          The prosecution moved to designate Officer Lisius as an expert.  RT at 239.  The

14  court asked defense counsel if he wished to voir dire the officer.  RT at 240.  Defense

15  counsel did not feel adequately prepared to voir dire the officer and expressed on the

16  record that he could not offer effective assistance to petitioner both before the jury, RT at

17  240, and later at a hearing on the issue outside the presence of the jury, RT at 246.  During

18  that hearing, defense counsel explained that he did not feel adequately prepared because

19  Officer Lisius was not identified as an expert witness on the witness list provided by the

20  prosecution, RT at 245, and further, defense counsel had not received copies of the

21  officer's training and educational materials ranging back to the officer's training at the

22  academy.  RT at 252.  The court's remedy to allow defense counsel time to prepare for

23  voir dire was to take the evening recess early so that defense counsel could review the

24  transcript and his notes.  RT at 240.  The court indicated that such training and educational

25  materials would have required a formal motion which defense counsel did not make in

26  pretrial.  RT at 254.  Further, Officer Lisius had already been qualified as an expert at the

27  grand jury proceeding in petitioner's case and defense counsel already examined him with

28  respect to his expertise.  RT at 249-50.  Based on all of these factors, and following the

evening recess, the court provided defense counsel the opportunity to voir dire Officer
Lisius the next day.  RT at 262.  The following morning, defense counsel asked the officer
a significant number of voir dire questions.  RT at 262-71.  Ultimately, the court was
satisfied with Officer Lisius' qualifications and recognized him "as an expert in the area of
recognition of cocaine and cocaine base" and allowed him to "give an opinion as to
whether the items are possessed for sale or for personal use."  RT at 273.

Counsel's performance in this regard was not prejudicial.  Petitioner has not shown
that had counsel had Officer Lisius' training and educational materials stemming back
from his academy days, or even more time to prepare voir dire, that the trial judge would
not have qualified him as an expert in the same limited manner.  Officer Lisius had
testified several times in superior court as a narcotics expert.  RT at 239.  In fact, he was
qualified as such previously in petitioner's own case before the grand jury.  As such, the
trial judge was satisfied with Officer Lisius' expertise and that he was inclined to
recognize him as an expert no matter what other questions defense counsel asked during
voir dire.  Thus, there is no indication that petitioner suffered any prejudice from his trial
counsel's purported lack of preparation leading up to the voir dire of Officer Lisius.  As a
consequence, petitioner's claim fails under <u>Strickland</u>.

### 3.   Evidence Relating to Possession of Residences

Petitioner also claims that counsel mishandled the issue of petitioner's possession
of the residences where the evidence was seized.  Specifically, in his traverse, petitioner
argues that: (1) counsel failed to make a motion to dismiss for lack of evidence that
petitioner resided at the Lochinvar residence by arguing that the officer lied about finding
male clothing there; (2) counsel failed to argue that petitioner's connection to the Lightfare
residence was based on the inadmissible hearsay in the form of a work badge that showed
that petitioner went by the alias Shawn Moore; and (3) counsel failed to present any
testimony or evidence to support his closing argument theory.

Petitioner fails to demonstrate that counsel could have moved successfully to
dismiss for lack of evidence.  Petitioner claims that the officer lied about observing male

1   clothing in the bedroom closet of the Lochinvar residence, but he points to no evidence or

2   to anything in the record that counsel could have used to argue that the officer lied.

3   Further, petitioner does not explain in what respect the work badge in the name of Shawn

4   Moore is hearsay.  Under California law, hearsay is defined as "evidence of a statement

5   that was made other than by a witness while testifying at the hearing and that is offered to

6   prove the truth of the matter stated."  Cal. Evid. Code § 1200.  During the course of their

7   surveillance and investigation, officers learned that petitioner went by the alias, Shawn

8   Moore.  RT at 480.  Officers observed the person they had identified as Shawn Moore

9   enter and exit the Lightfare residence.  RT at 482.  Officer Jackson identified petitioner in

10   court as the person who had been going by the name Shawn Moore.  RT at 482.  Upon

11   concluding their surveillance, officers successfully applied for and executed an arrest

12   warrant for petitioner and search warrants on the Lochinvar and Lightfare residences.

13   Officers seized a driver's license on petitioner following his arrest which was issued in the

14   name of Shawn Moore and contained petitioner's image.  RT at 488-89.  At the Lightfare

15   residence, police observed a vehicle registered in the name of Shawn Moore, a postcard

16   addressed to Shawn Moore, and a work badge issued to a Shawn Moore.  RT at 289-90,

17   480.  To whatever extent the work badge was offered for the truth of the matter asserted,

18   i.e. that petitioner was going by the name Shawn Moore, it was duplicative of a host of

19   other evidence linking petitioner to the Lightfare residence, such as the officer's

20   observations, the driver's licence, and the car and postcard at the Lightfare residence.  As a

21   result, the failure of counsel to object to the work badge, even if deficient, was not

22   prejudicial.

23        The court does not look at what counsel could have done differently, but whether

24   what counsel did was reasonable.  Babbitt, 151 F.3d at 1173.  Here, counsel thoroughly

25   developed evidence in support of his closing argument.  Counsel thoroughly cross-

26   examined each officer that testified for the prosecution.  Counsel elicited from these

27   witnesses testimony that supported his closing arguments that the police investigation was

28   unreliable and that there was doubt as to whether petitioner had real or constructive

possession of the residences.  For instance, counsel argued that there was confusion among the police about the chronology of the investigation, RT at 575, and petitioner's fingerprints were not found in the safe that contained the drugs, RT at 576.  Counsel also pointed out that there were inconsistencies by the police that informed them of petitioner's possession of the Lochinvar residence.  RT at 578.  Counsel further attacked holes in the evidence linking petitioner to the Lochinvar residence because there were no fingerprints, DNA, or anything else on any of the evidence or any surfaces in the unit.  RT at 584.  In sum, counsel's cross-examination of prosecution witnesses and his closing argument were objectively reasonable.  Petitioner has not shown that counsel's performance was deficient and prejudicial.  See Strickland, 466 U.S. at 693.  Accordingly, petitioner's claim of ineffective assistance of counsel fails.

**III.   Prosecutorial Misconduct**

Petitioner next claims that the prosecutor violated his due process right to a fair trial by lying to the jury.  Respondent counters that petitioner fails to specify what lies the prosecutor told.  In his traverse, petitioner argues that the prosecution presented witnesses who lied and fabricated testimony.  Petitioner also argues that the prosecutor mishandled evidence.

**A.   Legal Standard**

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  See  United States v. Agurs, 427 U.S. 97, 103-07 (1976).  The same result obtains when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959).

If the prosecutor knows that his witness has lied, he has a constitutional duty to correct the false impression of the facts.  United States v. LaPage, 231 F.3d 488, 492 (9th Cir. 2000).  This duty is not discharged merely because defense counsel knows, and the jury might figure out, that the testimony is false.  Id.  No lawyer, prosecutor, or defense

1  counsel, civil or criminal, may knowingly present lies to a jury and then sit idly by while

2  opposing counsel struggles to contain this pollution of the trial.  Id.

3      Prosecutors will not be held accountable for discrepancies in testimony where there

4  is no evidence from which to infer prosecutorial misconduct and the fairness of the trial

5  was not materially affected.  See United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir.

6  1995) (no evidence of prosecutorial misconduct where discrepancies in testimony could as

7  easily flow from errors in recollection as from lies).  Petitioner must establish a factual

8  basis for attributing knowledge that the testimony was perjured to the government.  See

9  Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004).

10      In sum, to prevail on a claim based on Agurs/Napue, the petitioner must show that

11  (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have

12  known that the testimony was actually false, and (3) that the false testimony was material.

13  United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360 U.S. at

14  269-71).  "Material" means that there is a reasonable likelihood that the false evidence or

15  testimony could have affected the judgment of the jury.  Morris v. Ylst, 447 F.3d 735, 743

16  (9th Cir. 2006).  If the claim meets the materiality standard under Agurs/Napue, then no

17  separate analysis of harmlessness under Brecht is required.  Hayes, 399 F.3d at 984.

18      **B.    Analysis**

19      Petitioner articulates two examples of prosecutorial misconduct.  First, petitioner

20  contends that the prosecution knowingly allowed witnesses to fabricate testimony.

21  Second, petitioner contends that the prosecutor tainted evidence by un-stapling and

22  commingling separate documents contained in People's Exhibit Number 4 that came from

23  different locations.

24      Petitioner fails to point to any indication in the record or other evidence that any

25  particular witnesses lied.  Petitioner argues that the police lied about finding male clothing

26  in the closet of the Lochinvar residence, but he points to no evidence beyond his own

27  assertion, and there is nothing in the record, to support this allegation.  Under

28  Agurs/Napue, petitioner must show that evidence or testimony is actually false.  Zuno-

1  Arce, 339 F.3d at 889. Further, petitioner must show that the prosecution knew or should

2  have known that the evidence or testimony is false. Id. Petitioner here fails to meet his

3  burden to make this showing.

4          Petitioner has also failed to show prosecutorial misconduct based upon the

5  prosecution's handling of People's Exhibit Number 4. The prosecutor removed certain

6  documents from an evidence bag, along with staples holding some of those documents

7  together. RT at 214-15. He did this in open court in front several witnesses. Id. He

8  admitted on the record having done so, and offered to have witnesses testify to exactly

9  how he had done so. Id. The judge accepted the prosecutor's representation and did not

10  require a further hearing to confirm that the prosecutor had not mishandled the documents.

11  Id. Petitioner does not demonstrate how this event represented misconduct except by

12  speculating that the prosecutor intentionally mixed papers from petitioner's car at the

13  Lightfare residence and others from the Lochinvar residence. Petitioner does not provide

14  any evidence that any papers were actually commingled, however. Petitioner also does not

15  explain what sorts of documents were mixed or what value they had as evidence. Because

16  the burden is on petitioner to prove misconduct, on the facts before this court there is not

17  sufficient proof for petitioner to carry his burden. Thus, petitioner's claim for

18  prosecutorial misconduct fails.

19  **IV.    Failure to Disclose Identity of Informant**

20          Petitioner next claims that his rights to a fair trial and cross-examination were

21  violated because the defense was not allowed to discover the identity of the confidential

22  informant who linked petitioner to the Lochinvar residence. On July 30, 2003, Judge

23  Teilh signed search warrants to be executed on the Lightfare and Lochinvar residences.

24  The affidavit in support of the search warrants was sealed in part, hiding the identity of the

25  affiant. Searches of the two residences led to the discovery of the evidence underlying

26  petitioner's conviction. Exh. 1, at 27-40. The affidavit consisted of 139 lines of text, 118

27  were unredacted, and 21 remained redacted to conceal the identity of the informant. Exh.

28  1, at 95. Judge Lisk conducted an in camera review of the affidavit and determined that

1   the affidavit as a whole provided probable cause for the searches, and that the redacted

2   portion hiding the identity of the affiant served the public interest and outweighed the

3   necessity for disclosure in the interest of justice.  Exh. 1, at 90-91.  Further, as a result of

4   the in camera review, the court determined that there was no reasonable possibility that the

5   confidential informant could provide exculpatory evidence or that nondisclosure might

6   deprive petitioner of a fair trial.  Exh. 1, at 90-91.  Following this in camera review, the

7   defense moved to suppress evidence stemming from the searches pursuant to California

8   Penal Code section 1538.5.  Exh. 11A, at 3-23.  Judge Lisk denied the defense motion at

9   the conclusion of the suppression hearing.  Exh. 11A, at 23.  This claim was not addressed

10  by the California Court of Appeal.

11          **A.      Legal Standard**

12          Under Roviaro v. United States, 353 U.S. 53, 59 (1957) the Supreme Court

13  recognized the Government's privilege to withhold from disclosure the identity of

14  confidential informants.  The Supreme Court noted, however, that the scope of the

15  privilege is limited.  "Where the disclosure of the informer's identity, or of the contents of

16  his communication, is relevant and helpful to the defense of an accused, or essential to a

17  fair determination of a cause, the privilege must give way."  Id. at 60-61.  The petitioner

18  bears the burden of showing that disclosure would be relevant to at least one defense.  See

19  United States v. Sai Keung Wong, 886 F.2d 252, 256 (9th Cir. 1989) (citing United States

20  v. Buffington, 815 F.2d 1292, 1299) (9th Cir. 1987)).  He must show that he has more than

21  a "mere suspicion" that the informant has information which will prove "relevant and

22  helpful" or will be essential to a fair trial.  United States v. Amador-Galvan, 9 F.3d 1414,

23  1417 (9th Cir. 1993). Once the threshold showing is made, a court must balance the "the

24  public interest in protecting the flow of information against the individual's right to

25  prepare his defense" in determining whether to disclose the identity of the confidential

26  informant.  Roviaro, 353 U.S. at 62.  There is no bright line rule.  See id.  Whether a

27  proper balance renders nondisclosure erroneous depends on the particular circumstances of

28  the case, taking into consideration the crime charged, the possible defenses, the possible

1  significance of the informer's testimony, and other relevant factors.  Id.

2       **B.     Analysis**

3       Petitioner fails to meet his burden under established federal Supreme Court law.  In

4  order to defeat the government's recognized privilege to withhold the identity of a

5  confidential informant, see Roviaro, 353 U.S. at 59, petitioner must show more than a

6  "mere suspicion" that the informant has information which will prove "relevant and

7  helpful" or will be essential to a fair trial.  Amador-Galvan, 9 F.3d at 1417.  Here, Judge

8  Lisk conducted an in camera review of the whole affidavit and concluded the following:

9  the warrant as a whole provided sufficient probable cause for the searches; there was no

10  reasonable probability that discovery of the informant's identity would provide any

11  exculpation to the petitioner; nondisclosure of the informant's identity would not result in

12  an unfair trial; and lastly, that concealing the informant's identity served the public interest

13  and outweighed the necessity for disclosure in the interest of justice.

14       The state court abided by federal Supreme Court precedent.  Thus, petitioner's

15  claim fails.

16  **V.   Sufficiency of the Evidence**

17       Petitioner next claims that his due process rights were violated because the trial

18  court did not overturn his conviction based on insufficient evidence.  Petitioner clarifies in

19  his traverse that he is specifically referring to the issue whether there was sufficient

20  evidence to prove that he had real or constructive possession over the residences where the

21  drugs and related evidence were found.  There was no reasoned state court opinion

22  regarding this claim.

23       **A.     Legal Standard**

24       The Due Process Clause "protects the accused against conviction except upon proof

25  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

26  charged."  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the

27  evidence in support of his state conviction cannot be fairly characterized as sufficient to

28  have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a

1  constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven,

2  entitles him to federal habeas relief, see id. at 324.

3      A federal court reviewing collaterally a state court conviction does not determine

4  whether it is satisfied that the evidence established guilt beyond a reasonable doubt.

5  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only

6  whether, 'after viewing the evidence in the light most favorable to the prosecution, any

7  rational trier of fact could have found the essential elements of the crime beyond a

8  reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at 319).

9      On habeas review, a federal court evaluating the evidence under In re Winship and

10  Jackson should take into consideration all of the evidence presented at trial.  LaMere v.

11  Slaughter, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports

12  conflicting inferences, a federal habeas court "must presume – even if it does not

13  affirmatively appear on the record – that the trier of fact resolved any such conflicts in

14  favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A

15  jury's credibility determinations are therefore entitled to deference.  Bruce v. Terhune, 376

16  F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson

17  does not permit a federal habeas court to revisit credibility determinations.  See id.  The

18  Jackson standard must be applied with explicit reference to the substantive elements of the

19  criminal offense as defined by state law.  Id.

20      **B.    Analysis**

21      Petitioner claims that his case should have been dismissed because there was not

22  sufficient evidence to prove beyond a reasonable doubt that he had a real or constructive

23  possession of the residences at issue.  Petitioner argues that his connection to the

24  residences was based solely on false testimony presented by Officer Lisius, the trial

25  court's "curt" and "testy" treatment of defense counsel, and the prosecution's "trickery."

26  (Traverse at 9.)

27      To the contrary, there was a substantial evidence from which a jury could

28  reasonably conclude that petitioner had real or constructive possession over the residences.

1   While conducting surveillance of petitioner at the Lightfare residence, officers saw a GMC

2   sedan registered to Shawn Moore, petitioner's alias, and a white Ford Mustang.  RT at

3   480.  Petitioner drove one of vehicles, the white Ford Mustang, from the Lightfare

4   residence.  RT at 482.  While conducting surveillance of petitioner at the Lochinvar

5   residence, officers saw him entering the apartment with a key.  RT at 119-20.  Later,

6   officers saw him walk out of the Lochinvar residence carrying plastic garbage bags, before

7   getting into the white Mustang and driving away.  RT 485-86.  At that point he was

8   stopped by SWAT members and taken to a staging area.  RT at 488.  Petitioner's

9   documents were seized from the Mustang and he was told that search warrants were being

10  executed on the two residences.  RT at 488.  One of the documents seized after petitioner

11  was stopped by SWAT was a California driver's license issued to Shawn Moore with the

12  petitioner's photograph on the license.  RT at 489.  In the residences, officers found

13  several pieces of evidence that petitioner had real or constructive possession over the

14  residences.  Inside one of the bedrooms of the Lightfare residence, officers found male

15  clothing, a work badge issued in the name of Shawn Moore, and a postcard addressed to

16  Shawn Moore.  RT at 289-90.  With respect to the Lochinvar residence, police seized a

17  health card and Planned Parenthood forms in petitioner's name from one of the bedrooms.

18  RT at 422.  Based on such evidence, a reasonable jury could certainly find beyond a

19  reasonable doubt that petitioner had actual or constructive possession of the residences

20  where the drugs were found.  Accordingly, there was sufficient evidence to support

21  petitioner's conviction under <u>Jackson</u>.

22  **VI.     <u>Denial of Discovery Motions</u>**

23          Petitioner next claims that he was denied a fair trial and right to confrontation

24  because his discovery was limited by the trial court.  Specifically, petitioner repeats his

25  contention that nondisclosure of the identity of the confidential informant violated his right

26  to due process.  Petitioner further argues that he was denied information concerning

27  Officer Lisius' training materials.  The legal analysis pertaining to petitioner's renewed

28  claim regarding the confidential informant was resolved at part IV, <u>supra</u>.  For the same

1   reasons as discussed above, this part of the claim fails.  However petitioner raises a new

2   argument by claiming that the prosecution's failure to turn over training and education

3   materials for Officer Lisius violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The

4   California Court of Appeal held that there was no error because "neither the express

5   designation of Officer Lisius as an expert nor the training materials he previously used

6   reasonably represent[ed] material and exculpatory information."  <u>Aikens</u>, 2005 WL

7   1531657, at 5.

8       **A.    Legal Standard**

9       The Supreme Court held that "the suppression by the prosecution of evidence

10  favorable to an accused upon request violates due process where the evidence is material

11  either to guilt or to punishment, irrespective of the good faith or bad faith of the

12  prosecution."  <u>Brady</u>, 373 U.S. at 87.  The Supreme Court has since made clear that the

13  duty to disclose such evidence applies even when there has been no request by the

14  accused, <u>United States v. Agurs</u>, 427 U.S. 97, 107 (1976), and that the duty encompasses

15  impeachment evidence as well as exculpatory evidence, <u>United States v. Bagley</u>, 473 U.S.

16  667, 676 (1985).  Evidence is material "if there is a reasonable probability that, had the

17  evidence been disclosed to the defense, the result of the proceeding would have been

18  different.  A 'reasonable probability' is a probability sufficient to undermine confidence in

19  the outcome."  <u>Id.</u> at 682.

20  A federal court must determine if the suppressed evidence was "material" based on

21  state law regarding the accused's guilt or punishment.  <u>Anderson v. Calderon</u>, 232 F.3d

22  1053, 1062, 1066 (9th Cir. 2000) (to decide whether undisclosed information was

23  favorable and material, federal habeas court looks to controlling state law).  If, for

24  example, the information the prosecutor failed to disclose is not admissible under state

25  law, then it does not "qualify as evidence for <u>Brady</u> purposes, let alone material evidence."

26  <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc).

27      **B.    Analysis**

28      Applying <u>Brady</u> and <u>Bagley</u>, the California Court of Appeal found that there was no

1   error concerning the prosecution's failure to discover Officer Lisius' training and

2   educational materials.  <u>Aikens</u>, 2005 WL 1531657, at 5.  The California Court of Appeal

3   reasoned that:

> Defendant fails to explain how this particular material itself
> represented substantially favorable impeachment evidence,
> and, we consider it pure speculation to suggest that it would
> have undermined Officer Lisius's testimony. In this regard, we
> observe that Officer Lisius was not being offered as an expert
> on complicated scientific or medical or technological subjects.
> Concerning those subjects, a lack of formal study, laboratory
> training, professional credentials; or a lack of familiarity with
> current, relevant, or significant theories, research, procedures,
> or processes might weigh heavily against a court's decision to
> qualify the witness as an expert or substantially reduce the
> weight the jury assigns to his or her testimony. Officer Lisius's
> expertise centered on the ability to identify firearms, drugs,
> and indicia of drug trafficking. While such matters are
> sufficiently beyond the ken of ordinary people to warrant the
> admission of expert testimony, they are not complicated issues
> subject to academic or highly technical debate. Rather, such
> expertise is based on standard training concerning firearms and
> drugs, personal experience in the field, familiarity with the
> collective experience of other investigators, and observational
> awareness and sensitivity. In general, counsel should be able to
> adequately voir dire and cross-examine law enforcement
> experts about their experience and level of skill in these areas
> without having any or all of the background training manuals
> and educational material that an officer has previously used.
> This is especially so here because the pertinent questions here
> involved whether a TEC-9 weapon is an assault weapon and
> whether the presence of very large amounts of drugs-e.g., a
> kilo of cocaine-various weapons, a large amount of cash,
> scales, razor blades, etc., reflected possession for sale or
> simple for personal use.
>
> In sum, there may have been a molehill of material that
> could have been produced. However, contrary to defendant's
> suggestion, the failure to produce it does not constitute a Sierra
> Madre of constitutional and statutory violations and prejudice.
> Moreover, even without Lisius's expert opinions, we doubt that
> a rational juror would or could have had a reasonable doubt
> concerning whether defendant possessed such huge amounts of
> different drugs for sale rather than personal use. Under the
> circumstances, we find that the trial court acted well within its
> discretion in calling a recess to permit defense counsel to
> prepare, requiring counsel to proceed when trial resumed, and
> declining to give the defense's requested instruction.

<u>Id.</u> at *5-6.

<u>Brady</u> requires discovery of "material" evidence that is exculpatory or could be

used for impeachment.  <u>Bagley</u>, 473 U.S. at 676.  To begin with, the education and

training materials for Lisius were only requested for purposes of voir dire; it was not

1  directly exculpatory evidence, nor was it requested for impeachment purposes.  In any
2  event, the California Court of Appeal correctly determined that there is no reasonable
3  probability that the result of the proceeding would have been different had the materials
4  been turned over.  See id. at 682.  The trial court was already inclined to qualify Officer
5  Lisius as an expert due to his experience with regard to narcotics, he had already been
6  qualified as an expert earlier in the case during the grand jury proceedings, and he had
7  been qualified as a narcotics expert in superior court on several previous occasions.
8  Training and educational materials spanning a decade and going all the way back to the
9  officer's days at the academy were irrelevant and immaterial for purposes of qualifying
10  him as an expert in this case.  Additionally, petitioner would have been convicted anyway
11  of possession for sale of narcotics considering the quantity of drugs, weapons, scales, drug
12  processing paraphernalia, and the large amount of cash seized from the residences.

13      There was no Brady violation in this case.  Thus, the state court decision did not
14  result in a decision that was contrary to, or involve an unreasonable application of, clearly
15  established federal law, as determined by the Supreme Court of the United States.

16  **VII.   Limiting Cross-examination of Officer Lisius**

17      Petitioner next claims that his confrontation clause right was violated because the
18  trial court refused to allow defense counsel to cross examine Officer Lisius about "drug
19  mules."  Respondent counters that courts have wide discretion to limit cross-examination
20  of adverse witnesses, for example when balancing probative value against prejudice.
21  Further, respondent argues that the line of questioning regarding drug mules was outside
22  the scope of cross-examination because the prosecution did not offer any evidence creating
23  an inference that petitioner was a drug mule, and petitioner did not make an offer of proof
24  that he had evidence tending to show that he was a drug mule.  In the alternative,
25  respondent contends that if this court finds that the trial court abused its discretion, that
26  any error was harmless because of the weight of the evidence showing that petitioner was
27  a drug dealer and not a drug mule.

28      **A.      Legal Standard**

1    The Confrontation Clause of the Sixth Amendment provides that in criminal cases

2  the accused has the right to "be confronted with witnesses against him."  U.S. Const.

3  amend. VI.  The federal confrontation right applies to the states through the Fourteenth

4  Amendment.  See Pointer v. Texas, 380 U.S. 400, 403 (1965).  The Confrontation Clause

5  does not prevent a trial judge from imposing reasonable limits on cross-examination based

6  on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation

7  that is repetitive or only marginally relevant.  See Delaware v. Van Arsdall, 475 U.S. 673,

8  679 (1986).  To determine whether a criminal defendant's Sixth Amendment right of

9  confrontation has been violated by the exclusion of evidence on cross-examination, a court

10  must inquire whether: "(1) the evidence was relevant; (2) there were other legitimate

11  interests outweighing the defendant's interests in presenting the evidence; and (3) the

12  exclusion of evidence left the jury with sufficient information to assess the credibility of

13  the witness."  United States v. Beardslee, 197 F.3d 378, 383 (9th Cir. 1999) (citations

14  omitted)

15    A claim that the petitioner's Confrontation Clause rights were violated by

16  restrictions on cross-examination is judged under the trial error standard.  When cross-

17  examination on a proper subject is denied, the court should assume that the damaging

18  potential of the cross-examination would be fully realized and then determine, in light of

19  the importance of the witness' testimony in the entire case, the extent of the cross-

20  examination otherwise permitted and the overall strength of the prosecution's case, see

21  United States v. Miguel, 111 F.3d at 671-72 (citing Van Arsdall, 475 U.S. at 684), whether

22  the error had a substantial and injurious effect or influence in determining the jury's

23  verdict, see Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

24    **B.    Analysis**

25    During his cross-examination of Officer Lisius, defense counsel asked a series of

26  questions about what a drug "mule" is.  RT at 359.  The officer provided a detailed

27  explanation describing drug mules and how they operate.  RT at 359.  Defense counsel

28  then asked, "So when a mule is possessing what may be large quantities of drugs they are

1   not possessing it for sale to sell it, but they are merely possessing it to transport it for

2   somebody else?"  RT at 360.  The prosecution objected to this question on the grounds

3   that it called for a legal conclusion.  RT at 360.  Defense counsel argued that the question

4   was appropriate because the officer had been qualified as an expert.  RT at 360.  The court

5   ruled that "that's really irrelevant here unless you have some offer of proof."  RT at 360.

6   Defense counsel countered, "I don't have to make an offer of proof."  RT at 360.  The

7   court then ruled, "This is - I think well off the subject . . . .  Why don't we do this.  Why

8   don't we take the afternoon recess.  We'll be in recess until 25 minutes past 3:00.  And I'll

9   just ask that you review your notes during the recess."  RT at 360.  After the recess,

10   defense counsel did not ask any other questions about drug mules.  Much later, at the end

11   of trial, defense counsel stated that the reason he asked that line of questioning was to

12   come up with an alternate theory that petitioner may have possessed the drugs, guns, and

13   other evidence for purposes other than for sale.  RT at 512.

14        The California Court of Appeal held that under state law, "the trial court retains

15   wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of

16   the issues, or of marginal relevance. [Citation.]"  <u>Aikens</u>, 2005 WL 1531657, at 7.  Given

17   the weight of the evidence tending to show that petitioner was not a drug mule, "the trial

18   court could reasonably conclude that the question about the intent of a "mule" raised

19   speculative issues that were irrelevant and potentially confusing."  <u>Id.</u>  Further the state

20   court found that:

21        [D]efense counsel did not attempt to rephrase his question or
         otherwise pursue his goal in a different way. Nor did he make
22        an offer of proof that might have made this area of inquiry
         more relevant. Rather, he asked his question, and when the
23        court sustained the objection, he dropped the subject and he
         waited until the close of evidence to make his record.

24   <u>Id.</u>

25        Although it cited only state law, the California Court of Appeal adhered to the

26   principles of the applicable federal law as established by the Supreme Court of the United

27   States.  Under <u>Van Arsdall</u>, the "Confrontation Clause does not prevent a trial judge from

28   imposing reasonable limits on cross-examination based on concerns of harassment,

1  prejudice, confusion of issues, witness safety or interrogation that is repetitive or only
2  marginally relevant."  475 U.S. at 679.   As the state court found, the questioning about
3  drug mules was outside the scope of cross-examination without an offer of proof, that it
4  was speculative, irrelevant, and would confuse the jury.  This analysis also conforms with
5  the <u>Beardslee</u> factors, cited above.  <u>See</u> <u>Beardslee</u>, 197 F.3d at 383 (allowing limitation on
6  cross-examination based on considerations of relevance and confusion).

7        In addition, the state court correctly found that any error by the trial court would be
8  harmless because of the great weight of evidence proving that petitioner was a drug dealer,
9  as opposed to merely a drug mule.  For instance petitioner ran a sophisticated narcotics
10 operation out of two residences, had false documents issued under the name of his alias,
11 possessed materials for handling and distributing narcotics, possessed significant amounts
12 of drugs including a kilo of cocaine, thirty-grams of cocaine base, fifty-four rocks of crack
13 cocaine, and seventy-five MDMA pills.  In addition petitioner owned a safe which
14 contained most of the drugs as well as 4700 dollars.  Further, petitioner owned a bullet
15 proof vest, a short barreled shotgun, an assault weapon, and a revolver.  Finally, petitioner
16 did not present any evidence to support the drug mule theory or challenge Officer Lisius'
17 expert opinion.  Therefore, even if defense counsel were allowed to ask a hypothetical
18 question, or a question eliciting a legal conclusion from Officer Lisius, the jury would still
19 not have any basis for finding that petitioner was only a drug mule.  For these reasons, any
20 error by the trial court did not have a substantial and injurious effect on the verdict under
21 <u>Brecht</u>.  Accordingly, petitioner is not entitled to habeas relief on this claim.

22 **VIII.   <u>Upper Term Sentence</u>**

23       Lastly, petitioner claims that the trial court violated his constitutional rights by
24 imposing an "upper term" sentence based on aggravating factors that had not been found
25 true by a jury beyond a reasonable doubt.   Petitioner was sentenced to fifteen years and
26 four months in state prison after the trial court imposed upper terms on two counts of drug
27 possession for sale, and for the enhancement of being armed with a firearm.  RT at 629.
28 The court imposed these upper terms based on its own findings that petitioner's conduct

1  exhibited professionalism and sophistication in a narcotics operation, the quantity of the

2  narcotics, and the fact that petitioner was operating two simultaneous residences in an

3  effort to avoid detection; aggravating factors under Cal. Health & Safety Code § 11351.5

4  (citing Cal. Rules of Court §§ 4.421(a)(8)).  RT at 629.

5      **A.`   Legal Standard**

6      Petitioner's claim is based on the United States Supreme Court decision in

7  Cunningham v. California, 127 S. Ct. 856 (2007), which held that California's determinate

8  sentencing law violated the Sixth and Fourteenth Amendment rights to a jury trial because

9  "circumstances in aggravation are found by the judge, not the jury, and need only be

10  established by a preponderance of the evidence, not beyond a reasonable doubt[.]"  Id. at

11  868.  In Cunningham, the Court's decision was based upon its prior decisions in Apprendi

12  v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (1999), and

13  United States v. Booker, 543 U.S. 220 (2005).  See Cunningham, 127 S.Ct. at 871.

14      In Apprendi, the Supreme Court held that any fact that increases the penalty for a

15  crime beyond the prescribed statutory maximum must be submitted to a jury and proved

16  beyond a reasonable doubt.  Apprendi, 530 U.S. at 466.  In Blakely, the Supreme Court

17  explained that "the statutory maximum for Apprendi purposes is the maximum sentence a

18  judge may impose solely on the basis of the facts reflected in the jury verdict or admitted

19  by the defendant."  Blakely, 542 U.S. at 303.  This means that the "the middle term

20  prescribed in California's statutes, not the upper term, is the relevant statutory maximum."

21  Cunningham, 127 S. Ct. at 868.  In Cunningham, the Supreme Court, citing Apprendi and

22  Blakely, held that California's Determinate Sentencing Law violates a defendant's right to

23  a jury trial to the extent that it contravenes "Apprendi's bright line rule: Except for a prior

24  conviction, 'any fact that increases the penalty for a crime beyond the statutory maximum

25  must be submitted to a jury, and proven beyond a reasonable doubt.'"  Id. (quoting

26  Apprendi, 530 U.S. at 490).

27      In addition, not only does petitioner have a right to have a jury determine factors in

28  aggravation, but also, he has a right to be notified of what factors will be before the jury.

1   It is clearly established federal law that a criminal defendant has a Sixth Amendment right

2   to be informed of any charges against him, and that a charging document, such as an

3   information, is the means by which such notice is provided.  Gautt v. Lewis, 489 F.3d 993,

4   1004 (9th Cir. 2007) (citing Cole v. Arkansas, 333 U.S. 169, 201 (1948)).  In Apprendi,

5   the Court made clear that other than the fact of a prior conviction, any fact that increases

6   the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

7   jury and proved beyond a reasonable doubt, and therefore must be charged in an

8   information or indictment as well.  See Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir.

9   2001) (citing Apprendi, 530 U.S. at 488-90).

10          **1.     Retroactivity of *Cunningham***

11          Petitioner argues that, even though Cunningham had not been decided until 2007,

12   years after petitioner's sentence became final in 2004, the decision nevertheless applies

13   retroactively to his case.

14          In Teague v. Lane, the Supreme Court held that a federal court may not grant

15   habeas corpus relief to a prisoner based on a new constitutional rule of criminal procedure

16   announced after his conviction and sentence became final.[3]  Teague v. Lane, 489 U.S. 288,

17   310 (1989).  In order to determine whether a constitutional rule is new, the court must

18   "survey the legal landscape as it then existed" and determine whether a court, considering

19   the defendant's claim at the time his conviction became final, would have felt compelled

20   by existing precedent to conclude that the rule he seeks was required by the Constitution.

21   Caspari v. Bohlen, 510 U.S. 383, 390 (1994).  The inquiry must focus on whether the rule

22   was dictated by precedent, i.e., whether no other interpretation was reasonable.  Lambrix

23   v. Singletary, 520 U.S. 518, 538 (1997).  Put simply: "[A] case announces a new rule if the

24   result was not dictated by precedent existing at the time the defendant's conviction became

---

26   [3]The two narrow exceptions to general rule, permitting new rules that place "certain
27   kinds of primary, private individual conduct beyond the power of the criminal law-
     making authority to proscribe," and that are "implicit in the concept of ordered liberty" to
28   apply retroactively, are not applicable in this case.  Teague, 489 U.S. at 311 (internal
     citations omitted).

1    final." Teague, 489 U.S. at 301.

2         In Butler v. Curry, the Ninth Circuit determined that the Supreme Court's decision

3    in Cunningham did not render a new rule, rather, "[i]t simply applied the rule of Blakely

4    to a distinct but closely analogous state sentencing scheme."  528 F.3d 624, 636 (9th Cir.

5    2008).  Butler was sentenced to the upper term of the range based on two aggravating

6    factors found by the trial judge; that his "victim was particularly vulnerable" and that

7    Butler was on "probation. . . when the crime was committed[.]"  Id. at 643 (citing Cal.

8    Rules of Court §§ 4.421(a)(3), (b)(4)).  A month after Butler filed a petition for writ of

9    habeas corpus in federal district court, the United States Supreme Court decided

10   Cunningham.  In deciding whether to affirm the district court's grant of a conditional writ

11   of habeas corpus, the Ninth Circuit "survey[ed] the legal landscape as it then existed," see

12   Caspari, 510 U.S. at 390, and determined that the Supreme Court's decision in

13   Cunningham was compelled by existing Sixth Amendment case law at the time Butler's

14   conviction became final.  Butler, 528 F.3d 634-35.  The court determined that the Supreme

15   Court's decisions in "Apprendi, Blakely, and Booker, firmly established that a sentencing

16   scheme in which the maximum possible sentence is set based on facts found by a judge is

17   not consistent with the Sixth Amendment."  Id. at 635.

18        Cunningham is not a new constitutional rule.  Therefore, its mandate that upper

19   term sentences may only be imposed when juries, not judges, find circumstances in

20   aggravation beyond a reasonable doubt is applicable to petitioner's sentence despite the

21   fact that Cunningham was decided after petitioner's sentence became final on direct

22   review.

23        **B.    Exhaustion**

24        Respondent claims that petitioner has failed to exhaust his state court remedies, as

25   is necessary in order for his federal habeas corpus claims to be considered.  28 U.S.C. §

26   2254(b)(1)(A).  Respondent relies on the premises that "a state prisoner who believes that

27   some decision of the United States Supreme Court subsequent to the state court decision in

28   his case requires that his conviction or sentence be set aside should first pursue any state

1  remedy. . . before applying for a federal writ of habeas corpus."  Mem. of P. & A. at 23

2  (quoting <u>Blair v. California</u>, 340 F.2d 741, 745 (9th Cir. 1965)).  Thus, respondent argues

3  that, "to the extent [p]etitioner seeks application of <u>Cunningham</u> to his case, he should

4  return to state court to present his upper term sentencing claim in light of <u>Cunningham</u>."

5  Mem. of P. & A. at 24.  The State in <u>Butler</u> presented an identical argument to the Ninth

6  Circuit.  <u>Butler</u>, 528 F.3d at 639.  The court determined that "[w]here there is no new rule

7  announced, the state court has had a fair chance to address the issue when it was raised,

8  and there is no reason to require further exhaustion."  <u>Id.</u>  Accordingly, under <u>Butler</u>,

9  respondent's exhaustion argument fails.

10      **C.    Analysis**

11          Although the trial court violated petitioner's constitutional rights under <u>Apprendi</u>,

12  <u>Blakely</u> and <u>Cunningham</u> by finding aggravating factors without submitting them to the

13  jury for a determination beyond a reasonable doubt, any constitutional error was harmless.

14  Petitioner would only be entitled to relief if the constitutional error "had substantial and

15  injurious effect" on petitioner's sentence.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623

16  (1993); <u>Butler</u>, 528 F.3d at 648 (applying harmless error analysis to

17  <u>Apprendi</u>/<u>Cunningham</u> error, and citing <u>Washington v. Recuenco</u>, 548 U.S. 212, 220-221

18  (2006) (holding that sentencing errors are subject to the harmless error)).  Under that

19  standard, we must grant relief if we are in "grave doubt" as to whether a jury would have

20  found the relevant aggravating factors beyond a reasonable doubt.  <u>O'Neal v. McAninch</u>,

21  513 U.S. 432, 436 (1995). Grave doubt exists when, "in the judge's mind, the matter is so

22  evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the

23  error." <u>Id.</u> at 435.

24          The court does not have "grave doubt" that the jury would have found petitioner's

25  narcotics operation exhibited professionalism and sophistication, or that there was a large

26  quantity of narcotics .  The trial court reached this conclusion based on the same

27  overwhelming evidence and observations available to the jury.  The jury found that

28  petitioner had real or constructive possession over two residences.  He successfully passed

1  under the alias Shawn Moore, and had a work badge and driver's license issued under that

2  alias name.  Petitioner was in possession of a short barreled shotgun, semi-automatic

3  firearm, and a revolver.  He owned a bullet proof vest.  His residences contained scrubbing

4  pads, razors, scales, and other materials required for preparing and distributing massive

5  amounts of narcotics.  Petitioner owned a safe which contained a kilo of cocaine, an

6  additional thirty-two grams of cocaine base, seventy-five MDMA pills, 4700 dollars, and

7  weapons.  In addition, fifty-four rocks of crack cocaine were seized, three of which were

8  the size of eight balls, used by high end dealers to break apart into saleable quantities.

9  According to Officer Lisius' expert opinion, petitioner was a "high end" drug dealer.

10  There is no doubt that the amount of narcotics in this case was large.  Further, petitioner's

11  use of multiple residences and possession of weapons, fake documentation in the name of

12  his alias, and other materials, demonstrated his professionalism and sophistication in

13  conducting a major narcotics operation.

14        Accordingly, because of the overwhelming evidence from which the jury would

15  have found the aggravating factor, the Apprendi error was harmless and petitioner's claim

16  fails.

17  **CONCLUSION**

18        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

19  Clerk shall enter judgment for Respondent and close the file.

20        IT IS SO ORDERED.

21  DATED: _____11/17/08_____

                       *Ronald M. Whyte*

22                         RONALD M. WHYTE
                       United States District Judge